Case number 193096, Teresa Berry v. Delaware County Sheriff's Office You may proceed for the appellant Good morning Good morning your honors I am not reserving any time for rebuttal Alright Your honor, I am here today on behalf of Teresa Berry, the mother of the decedent Riana Felicia who has appealed a decision entered in the United States District Court The crux of the issue, why I am here, is because the court below found that the Delaware County Sheriff's Office did not fail to train its officers and with that one finding, I believe that there are disputed issues of fact on either side and that the trial court did not consider the ones presented by the plaintiff and I am here today to present those to this court Specifically, there was an issue, what was called medical policy and that was record number 40 and it was attached to the affidavit of Jessica Jackson and in that medical policy, it indicated that correction officers were considered to be health trained personnel When you questioned each correction officer that had contact with Ms. Felicia in the 40 some hours she was at the jail before she died those correction officers and those deputies, Deputy Monson, correction officer Kuntz, correction officer O'Brien none of them had any health training outside of CPR and first aid and if you went further into questioning them related to this specific policy none of them had any idea on what the definitions of this policy meant with respect to the direction they were given as being health trained personnel Specifically, the policy indicated that the health trained personnel, which were the correction officers had to take certain steps when prisoners were dropped off via warrant or otherwise at the jail In this particular case, when Ms. Felicia was dropped at the jail the intake procedures that are set forth in this policy for the correction officers to follow weren't followed and when asking Deputy Kuntz, I've withdrawn, correction officer Kuntz or correction officer O'Brien the two correction officers who had interaction with Ms. Felicia in holding cell 4 whether or not they had ever performed an intake questionnaire or whether or not one was done with Ms. Felicia they could not enunciate what the policy meant with respect to every time a prisoner was taken in for an assessment whether or not they had to do it and that was because they couldn't remember ever being trained to do it except one time Then when you continued to question them, the policy went further and indicated that specifically if an individual who was arrested was in questionable health they must first be delivered to a medical facility When I asked every correction officer who was seated for deposition and every deputy what questionable health meant, none of them could explain it In fact, they said open bleeding was really the most obvious questionable health So in my brief, and I presented to the court all this information indicating that none of these correction officers knew how to determine whether or not an individual was in questionable health They purported to have Ms. Felicia in a cell where they could watch her but couldn't enunciate the purpose for which they were watching her because they couldn't determine what questionable health was and when, if ever, to relate it to a nursing staff member other than open bleeding When the trial court made its determination relative to this case it didn't analyze for all intents and purposes in its decision any of that information but went instead and said that the Deputy Jail Administrator Jessica Jackson said that the deputies and the correction officers get medical training annually and that they get training over this policy annually which specifically conflicted with the testimony of the actual employees when you asked them if they'd ever received any training regarding the policy any training regarding what health train personnel were or any training regarding what questionable health was When you look at the case law regarding evidence sufficient to establish that there was a failure to train there isn't some magic level of failure to train that you have to establish Obviously there's a case by case determination but in this particular case the evidence was that these officers outside of the CPR and first aid training they had at the academy had no other training whatsoever Does it make any difference in this case on the issue of causation? Because the deputy here, Monson, relayed to the nurse at the jail the medical history of the inmate and the purported problems that she said she was having I mean, the fact that he gave the inmate to the nurse doesn't that solve these problems, at least for causation purposes? I don't believe it does Why not? Because in this particular case, the nurse Why do you say nurse? Because she was an LPN and she wasn't allowed to make assessments Are LPNs nurses or not? They're nurses under Ohio law but they're only allowed to take vitals They're not allowed to make medical assessments Does she have to consult with a doctor? A doctor or a nurse practitioner She said that she had consulted with a doctor, right? She said that in her deposition but actually the doctor, Betty Mitchell, said she never spoke to her He didn't recall, but she said that she did She did say that, but there's no evidence There's no evidence to refute that, is there? There is So the policy of the correctional health care company is that they have to do a medical pathway that they have to reach out to the doctor or a registered nurse That's your claim against the health provider that you've settled with Correct And that's probably your better claim here Correct, I'm not going to deny that Obviously your better claim Right But we're looking at whether the county had a policy that caused the tragic death here That's correct And I'm having trouble with the causation, that's all And I see, I don't not see that issue I mean, I understand that there's an issue with causation or we wouldn't be here If it was that clear cut, I think everything would have gotten resolved But in this particular case, because he delivered her to the jail in violation of a written policy I mean, and the written policy said he was not to deliver her to the jail He was to take her to the They say that applies to third parties Right, that's what they say, that's how they interpret it That's not how it reads And in fact, Detective Overly said it applied to third parties Deputy Monson was fairly unaware that that language existed when he was deposed And he did not indicate to What's your best evidence that it does not, is not limited to third parties Is it the deputy's testimony that he did not The language of the policy that Delaware County wrote that says the arresting agency They were the arresting agency And therefore they wrote that language, they're subject to that language And they don't train their own deputies to follow that language In fact, their own deputies just bring them in to be reviewed by Non-medical trained personnel who can't make decisions Or, you know, they have basically contracted away or attempted to contract away Their liability to follow policies that are put in place to protect these people And their excuse is, we delivered her to an LPN We don't need to be health trained personnel anymore We put her in holding cell 4 and she didn't move And, well, they're going to argue that she did But they didn't have her on a watch They did not, even if they had had her on a watch Officer O'Brien said all they do is walk up to the window and look in the window and walk back And they make a note Make a note of what? What did they make a note of? I mean, they've got a contract with a health care provider Are you saying they have a duty to not follow the advice of the health care provider that they have the contract with? That they have a duty to overrule the medical decisions made by the health care provider? What's your argument there? My argument is that they have a duty to follow their written policy And that written policy says, as health trained... Is that a constitutional? They have a constitutional duty to follow a written policy they promulgated? I kind of doubt that No, I doubt that too What I'm saying is that they have a written policy in place And that was allegedly put in place to protect those people How is that a constitutional violation? It's a constitutional violation if you put it in place and then don't train anyone how to follow it But you put it in place and have it in place saying we have it in place So it's there, so it says here's what you do But we don't train anyone how to follow it We don't train anyone on the underlying knowledge necessary to interpret it We just have it put there so we can say we committed our constitutional minimum So if they have a policy, they have a constitutional duty to follow that policy Otherwise there's a 1983 violation That's your argument I don't think that's what the law is But I think that they have a constitutional duty to train their officers On the underlying substance of that policy so that they can actually follow through I agree with that, that they have a duty to train To make sure that there's not grossly unconstitutional treatment of the inmates But I don't think they have a constitutional duty to follow every line of a policy they promulgate, that's all Well, I don't disagree with that But what I'm saying is in this case, I don't disagree with that What I'm saying, or what I'm trying to argue, and have been trying to argue Is that these officers and this jail staff had no idea what this policy said And no idea what to do And it was, for all intents and purposes, the perfect storm Which, a couple hours later, affected the life of somebody else And if you're going to put these policies in place I think that they have a duty to train their officers, and they didn't do it And that's my argument Thank you I know you've sat down, but can you address the other issue about failure to substitute the proper party? That's the other basis for affirmance You can just address that briefly Yes, briefly So, there was an issue in my office with my secretary's husband who was out She filed an affidavit indicating that we had done the complaint in July The amended complaint when we had filed our memorandum contract When the court granted the order to substitute the proper party She was out taking care of her husband who was on medical leave And it didn't get filed And it was sitting there to file, and ready to file So we filed a motion, because we filed it 36, 48 hours late To file it, because it had been prepared since July And that, I believe, is excusable neglect The issue being, though, if there's no meritorious defense Which is the underlying issue with the first claim Then I guess we don't get to substitute But if there is, and it's reversible I think that because we have a meritorious defense That that mistake is excusable, and it should be substituted Is it an abuse of discretion not to excuse it? Yes, I believe so, just given the amount of time Your office is on notice, like in bold type That the substitution must be made within seven days Otherwise, the case will be dismissed I mean, you had explicit notice, didn't you? Yes, we did Obviously, we did Because your office is guilty of legal malpractice Does that mean that the judge abuses the discretion By not filing an order? I don't agree that our office was guilty of legal malpractice I believe that the systems were put in place to have it filed And given the timing of the scenario That everybody believed it had been filed And it wasn't, because the person who did the filing Was out of the office Okay, thanks Good morning Good morning May it please the Court My name is Angelica Jarmus And I am one of the attorneys representing Appellee, the Delaware County Sheriff's Office In this appeal filed by Ms. Barry The District Court's grant of summary judgment In favor of the Delaware County Sheriff's Office Should be affirmed Is there's no unconstitutional failure to train Shown on the record And as Ms. Barry conceded here today As well as at page six of her reply brief Failure to train is the sole issue on appeal And notably, a municipal liability Is at its most tenuous When a claim turns on a failure to train So, from the start, Ms. Barry faced a substantial hurdle And Judge Watson's judgment of Or grant of summary judgment to the Sheriff's Office As well as his denial of Ms. Barry's motion to vacate Was proper Even though Ms. Barry's amended complaint Seeking to substitute in the Delaware County Sheriff Russell Martin Was not officially filed Judge Watson still went through a full summary judgment analysis As if that second amended complaint had been filed And that summary judgment should be Affirmed for three reasons Primarily, Ms. Barry offers nothing more than A conclusory allegation of a failure to train And that blanket allegation Does not meet the stringent standard of fault Required for such a claim That comes to us from the 2011 case Connick v. Thompson But in reality, the Delaware County Sheriff's Office Trains its officers to both Recognize the signs of a medical emergency And identify when to contact medical And the third reason to affirm comes to us Because we thankfully have authenticated video Available to us That documents nearly all of Ms. Felicia's stay Inside the Delaware County Jail And in cases like this Where we have video footage of the event This court need not grant Ms. Barry All the benefit of the doubt Rather, the reasonable inferences are to be drawn To the extent they're supported by that video Really, Ms. Barry's failure to train argument Can be boiled down to the following Detective, the Delaware County Sheriff's Office Requires its officers to Identify an individual in questionable health And that's through a jail standard operating procedure But the Sheriff's Office allegedly provides No training on that topic Which is why Deputy Munson, the arresting deputy Transported Ms. Felicia to the jail Rather than the hospital In alleged accordance with the true customer practice Of the Sheriff's Office But that argument is significantly flawed For several reasons First, the policy that Ms. Barry refers to Which is document 40 in the record That's a jail standard operating procedure So the individual has to come to the jail Prior to the policy even taking effect But more importantly As the Sheriff's Office raised down below at the trial level And again, in its appellee brief Merely stepping foot inside the physical building of the jail Is not the equivalent to acceptance into the jail As an inmate Here, we've got the video footage of Deputy Munson driving Well, we don't have video footage of the drive But Deputy Munson drove approximately 8 miles From Ms. Felicia's home to the jail And we have video footage from the moment Deputy Munson and Ms. Felicia stepped foot in the jail That video comes with audio We hear Deputy Munson immediately request A nurse to come attend to Ms. Felicia Based on her complaints that she expressed to Deputy Munson We then see that within 10 minutes of Ms. Felicia Stepping foot inside that jail The nurse conducts a receiving screening We also have the benefit of seeing Ms. Felicia's appearance When she steps foot in that jail Notably, she's walking unassisted She's communicating, she's coherent She's upright, she's mobile She's able to go through the entire booking process Remove the outer layer of her clothing on her own And then we have a medical professional Who conducts the receiving screening And sees no need to transport Ms. Felicia to the hospital Prior to accepting her into the jail So the jail SOP has been followed And federal courts are reluctant to second-guess The judgments of medical professionals So the Delaware County Sheriff's Office Was justified in relying on that nurse's determination That Ms. Berry had no obvious need to go to the hospital I think that the fact that Deputy Munson Immediately secured medical attention for Ms. Berry Underscores the weaknesses of I'm sorry, that he secured medical attention for Ms. Felicia It underscores the weaknesses of Ms. Berry's failure to train claim And even moving to a more legal analysis It's not sufficient to simply claim a failure to train Without anything more There's usually a pattern that's needed to illustrate The deliberate indifferences for purposes of failure to train Here, Ms. Berry tries to point to the death of Ty Downard Which was a death that occurred after Ms. Felicia's death And it was a suicide Therefore there's no way that that death Could have put the Delaware County Sheriff's Office On notice of insufficient training And so she's therefore left with the single incident theory of liability Which makes the already difficult to prove failure to train claim That much harder And I know it's been found in cases where A law enforcement office failed to train its officers On the use of deadly force That's just not similar to what we have here There actually is a record of training Which is laid out in Apelli's brief document Document 27, pages 42-43 All of the corrections officers Attended the Opata Corrections Officer Academy All Delaware County Sheriff's Office new hires Were required to read and acknowledge Receipt of the policies There was an FTO program at the jail Corrections Officer O'Brien specifically said That during the field officer training program at the jail They were trained on Quote, intake procedures with medical staff On basic medical intake That's record 36-10 The record shows that the officers Within the Delaware County Sheriff's Office Were trained beyond just the basic first aid and CPR Notably, Deputy Munson was a certified first responder And he testified that that training Encompassed like a wide spectrum of medical issues But even still, this court semi-recently In Winkler v. Madison County Concluded that there was no deliberate indifference In a failure to train Or a failure to provide training to officers Beyond basic first aid or CPR So even if that's all the Delaware County Sheriff's Corrections Officers were provided That still does not equate to deliberate indifference However, the record here shows that they had additional training It's also important to note that Delaware County Sheriff's Office has 24-7 nurse staffing Therefore, the corrections officers Are not the only individuals at the jail Who are going to have to respond to medical emergencies Or be observing inmates in, quote, questionable health Which is different than in the Winkler case Where the corrections officers were the only individuals At the jail monitoring inmates for all but 40 hours per week Unless there are specific questions from this panel I'd be happy to address But it's requested that this court Affirm the grant of summary judgment In favor of the Delaware County Sheriff's Office Questions? Judge Merrick? All right, thank you, counsel All right, case will be submitted We'll call the next case